UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CARY LAMAR WILKERSON, JR., )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. 5:22-cr-00079-GFVT-CJS-1<br>Case No. 5:24-cv-00342-GFVT-CJS<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on Petitioner Cary Wilkerson's *pro se* Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. [R. 76.] Wilkerson was sentenced to a total of 240 months of imprisonment by this Court on September 19, 2023, following this Court's acceptance of Wilkerson's guilty plea on May 24, 2023. [R. 61.] On November 15, 2023, Wilkerson filed a notice of appeal, signifying his intent to appeal his sentence and guilty plea. [R. 66.] However, Wilkerson moved to voluntarily dismiss his appeal and subsequently filed the present motion under 28 U.S.C. § 2255. [R. 75; R. 76.] The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Wilkerson's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.

**I**

Petitioner Cary Wilkerson was charged with two counts of violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, two counts of violating 18 U.S.C. § 841(a)(1), possession with intent to distribute fentanyl, and two counts of violating 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of drug trafficking after a grand jury

returned a six-count indictment in March of 2023. [R. 36.] Wilkerson ultimately pled guilty to, and was convicted of, all six counts without a written plea agreement on May 23, 2025. [R. 55.] During Wilkerson's re-arraignment, this Court found that Wilkerson's guilty plea was knowing, voluntary, and supported by an independent basis in fact. [R. 73 at 25-26.] This Court also advised Wilkerson that he had various rights, including the right to proceed to trial, and that no one could force him to plead guilty. [R. 73 at 8-11.] When asked if he understood the rights he was forfeiting by pleading guilty, Wilkerson replied "Yes, sir" without qualification. *Id.* at 10. Following Wilkerson's conviction, this Court sentenced Wilkerson to 120 months of imprisonment on Counts 1, 2, 4, and 5, to be served concurrently, and 60 months of imprisonment on Counts 3 and 6 to be served consecutively to one another and to Counts 1, 2, 4, and 5, for a total of 240 months imprisonment. [R. 63.] Following his sentencing hearing, Wilkerson filed a notice of appeal to the Sixth Circuit Court of Appeals, but he voluntarily dismissed this appeal shortly thereafter. [R. 66; R. 75.] Wilkerson then filed the present motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [R. 76.] Wilkerson presents a myriad of arguments as to why his conviction and sentence should be vacated, which can be grouped into four categories of claims: (1) "insufficient evidence of violation of federal gun laws," (2) challenges to the guilty plea, (3) challenges to the sentence received, and (4) ineffective assistance of counsel. *See id.* The Court will address each of Wilkerson's arguments in turn.

## II

Before addressing the grounds Wilkerson presents in his § 2255 Motion, the Court finds it prudent to discuss the standards that apply to § 2255 motions in general. Under 28 U.S.C. §

2255(a), a federal prisoner may seek relief on grounds that: his sentence violated the Constitution or the laws of the United States, the Court lacked jurisdiction to impose the sentence, the sentence exceeded the maximum allowed by law, or the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Id.* Additionally, a federal prisoner must prove his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The Court recognizes that Wilkerson is proceeding *pro se* and construes his petition more leniently as a result. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). However, all parties—including pro se prisoners—must develop arguments in more than a "perfunctory manner." *United States v. Winkle*, 477 U.S. 407, 421 (6th Cir. 2007). Thus, issues "unaccompanied by some effort at developed argumentation are deemed waived." *Id.* (citing *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006)).

### A

The Court will first address whether Wilkerson has procedurally defaulted by failing to raise his claims, other than ineffective assistance of counsel, on direct appeal. The procedural default doctrine bars "claims that could have been raised on direct appeal but were not." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). A § 2255 motion is "not a substitute for direct

appeal," and thus claims that could have been raised on direct appeal, but were not, will not be entertained unless the petitioner shows: (1) good cause to excuse his failure to raise the claims on direct appeal or (2) that he is "actually innocent" of the crime. *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998). In his motion, Wilkerson does not meritoriously contend that he is "actually innocent" of the crimes for which he was convicted[1], but he argues that he did not bring these claims on direct appeal because "the government sent" him "a message through appellate counsel not to proceed any further in the appeals" or else he would face "more prison time." [R. 76 at 3.] Wilkerson claims that the government by and through his appellate counsel "threatened" him, and this "threat" "frightened him," which should constitute "good cause" for failure to raise his claims on direct appeal. [R. 91 at 4-6.]

In response, the United States contends that Wilkerson's claims are unsupported by the record. [R. 85 at 5.] First, the United States notes that there is no evidence to support Wilkerson's claim that this "threat" originated from the government and was communicated to Wilkerson through his appellate counsel. *Id.* The United States provides the Court with a letter from Wilkerson's appellate counsel, Dana Carron, in which Ms. Carron asserts that she explained to Wilkerson that he could have originally been charged with violation of a statute that carries a mandatory minimum sentence of thirty years. [R. 85-1 at 1.] Ms. Carron also provided the United States with a letter from Wilkerson's trial counsel, Robert Abell, in which Mr. Abell explains to Wilkerson that the firearm he was charged with possessing could have been charged as a machinegun under 18 U.S.C. § 924(c)(1)(B)(ii), subjecting Wilkerson to "a statutory

---

[1] Wilkerson does not contend that he is innocent of the drug charges. Wilkerson's contentions that there was no federal jurisdiction over the firearms charges will be addressed *infra*-Part II(B)(1).

mandatory minimum sentence of 30 years on that count alone." *Id.* at 2-3.

In reply, Wilkerson goes to great lengths to explain why he thought the government had communicated with his appellate attorney and even alleges that his appellate attorney became "an agent of the government." [R. 91 at 6.] However, Wilkerson fails to put forth any meritorious reason for his failure to raise his claims on direct appeal. Wilkerson merely reasserts that the government "threatened him" with more prison time which caused him to voluntarily dismiss his appeal. *Id.* at 5. Even so, Wilkerson's appellate counsel was correct in telling Wilkerson that if he were to withdraw his guilty plea—or if his plea were vacated upon appeal—the United States *could* recharge him under 18 U.S.C. § 924(c)(1)(B)(ii), which alone carries a mandatory minimum sentence of 30 years, in addition to the charges under 18 U.S.C. § 922(g) and 18 U.S.C. § 841(a). *See Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) ("[T]he Double Jeopardy Clause's general prohibition against successive prosecution does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to the conviction.").

In fact, the Sixth Circuit has routinely upheld the prosecution's ability to bring new, additional charges when a defendant withdraws their guilty plea or the guilty plea is vacated. *See e.g. United States v. Jones*, 469 F.3d 563, 566 (6th Cir. 2006). Thus, the United States could have "recharged" Wilkerson under the machine gun statute, which carries a statutory mandatory minimum sentence of thirty years, if Wilkerson had successfully vacated his guilty plea on appeal. As such, it is clear that what Wilkerson was "frightened" of was not some improper threat from the government, but rather, the statutorily mandated consequences of violating

federal law. Because Wilkerson has not established that he is actually innocent or shown good cause for his failure to raise his claims on direct appeal, his claims, other than those for ineffective assistance of counsel, are procedurally defaulted and will be denied.

## B

### 1

Even if viewed on the merits, each of Wilkerson's claims provide no avenue for habeas relief. Wilkerson first contends that the government did not establish that the firearms possessed by Wilkerson crossed a state line "prior to" his possession and therefore affected interstate commerce. [R. 76 at 15.] Importantly, Wilkerson does not suggest that the firearms did not cross a state line at some point before Wilkerson possessed them. *Id.* Rather, Wilkerson posits that the term "prior to" in this context means that he would have had to possess the firearms "first" after they crossed state lines. *Id.* He further asserts that "once a weapon comes into a state legally and is initially possessed legally within that state" the "interstate commerce connection is broken so that trade of that weapon within that state does not implicate interstate commerce." *Id.* at 16.

Wilkerson was convicted under 18 U.S.C. § 922(g)(1) which provides "[i]t shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to. . .possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (cleaned up). Courts in this Circuit and elsewhere have consistently held that the "in or affecting commerce" requirement is satisfied so long as the firearm was manufactured outside the state and thus had to cross state lines to reach the

defendant, regardless of whether the firearm entered the state legally. *See United States v. Thompson*, 361 F.3d 918, 923 (6th Cir. 2004) (noting that § 922(g) requires a "minimal nexus that the firearm have been, at some time, interstate commerce"); *United States v. Napier*, 233 F.3d 394, 401 (6th Cir. 2000) ("So long as that gun has moved across state lines at least once, it is subject to the exercise of congressional Commerce Clause authority.")

As previously noted, Wilkerson does not contest that the firearms he was charged with possessing were manufactured outside the Commonwealth of Kentucky and thus had to cross state lines to make it into Wilkerson's possession. [R. 76 at 17.] Wilkerson only contends that the firearms entered the Commonwealth legally, and were initially possessed legally within the Commonwealth, prior to his possession. *Id.* at 16. The case law makes clear that the threshold for "in or affecting commerce" is a low bar to clear, and in this instant case, it is uncontested that the firearms crossed state lines. As such, the firearms "affected" interstate commerce and were properly charged under § 922(g).

**2**

Wilkerson next brings a number of challenges related to his guilty plea. [R. 76 at 5.] Rule 11 of the Federal Rules of Criminal Procedure sets forth the steps that a court must take before accepting a guilty plea. This Rule is designed to "ensure that the district court is satisfied that the defendant's plea is knowing, intelligent, and voluntary." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005) (citing *United States v. Vonn*, 535 U.S. 55, 58 (2002)). Importantly, the Sixth Circuit has repeatedly held that a district court's adherence to the Rule 11 plea colloquy requirements cures any misunderstanding that the defendant may have had about his plea. *United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022) (citing *Ewing v. United*

7

*States*, 651 F.App'x 405, 410 (6th Cir. 2016).

Wilkerson first contends that his guilty plea was not "knowing" or "intelligent" because he "did not have the requisite understanding of the law in relation to the facts, nor did he understand whether his conduct actually fell within the charges concerning the guns and the § 851 enhancement he received." [R. 76 at 20.] Wilkerson also contends that there was no independent factual basis for his guilty plea. *Id.* at 25-27. The United States retorts that this Court "scrupulously followed the required procedure" to establish that Wilkerson knowingly and intelligently entered a guilty plea. [R. 85 at 9-10.] The United States also notes that it recited the facts necessary to show Wilkerson's guilt at his re-arraignment hearing, and Wilkerson admitted the government could prove his guilt beyond a reasonable doubt. *Id.* at 10. The Court finds that Wilkerson's guilty plea had a sufficient factual basis and was both knowing and intelligent for the reasons set forth below.

**a**

A plea is intelligent if a defendant "receives notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998). Rule 11 requires that the district court ensures the defendant understands "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). However, this does not typically require the Court to provide the defendant a robust explanation of the law where the charges are relatively straightforward. *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992). Being provided with a copy of the indictment prior to pleading guilty gives rise to a presumption that the defendant was informed of the nature of the charge against him. *Henderson v. Morgan*, 426 U.S. 637, 647 (1976).

8

At Wilkerson's re-arraignment hearing, when asked if he had enough time to read the indictment and go over it with his counsel, Wilkerson responded "[y]es, sir" without qualification. [R. 73 at 7.] Wilkerson now contends that he did not have ample time to review the indictment and received it fifteen minutes prior to the re-arraignment hearing. [R. 76 at 29.] However, the time for Wilkerson to raise this issue has long passed. As the Sixth Circuit has repeatedly held, "where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986). Wilkerson does not contend that the plea colloquy was deficient in any way. Wilkerson repeatedly affirmed to this Court that he understood the charges against him, the rights he was giving up by pleading guilty, and the potential consequences he faced as a result. [R. 73 at 3, 4, 10, 12, 18.]

At one point during the re-arraignment hearing, Wilkerson did ask the Court how somebody knows if they qualify under the Armed Career Criminal Act. [R. 73 at 15.] Wilkerson asserts that this question demonstrates that his plea was unknowing and unintelligent. [R. 76 at 5.] But the Court views his question in a much different light. Far from evidencing that Wilkerson's plea was unknowing, the fact that he asked this question gives further credence to his unqualified, affirmative answers to the Court's prior and subsequent questions because it demonstrates that if he was confused, he would ask the Court to clarify. Therefore, the Court finds—as it did initially—that Wilkerson's plea of guilty was both knowing and intelligent.

**b**

Under Rule 11, before the Court accepts a defendant's plea of guilty, it must determine that there is a sufficient factual basis for the plea. Fed. R. Crim. P. 11(b)(3). The Sixth Circuit

has held that this is a subjective standard, meaning the Court must "*subjectively* satisfy *itself* of an adequate factual basis." *United States v. Short*, 128 F.4th 823, 825 (6th Cir. 2025) (emphasis in original). Additionally, the Court need only "some evidence," and not necessarily "strong evidence" that the defendant committed the offense. *Id.* (quoting *United States v. Mobley*, 618 F.3d 539, 547 (6th Cir. 2010)). Importantly, a defendant's sentencing proceedings may contribute to or even provide the factual basis for his plea. *Short*, 128 F.4th at 826.

In the instant motion, Wilkerson contends that "the government did not produce or show any facts that show a federal crime." [R. 76 at 26.] Wilkerson also takes issue with his designation under the Armed Career Criminal Act because "ACCA [was] discussed at re-arraignment, but [the] government was not seeking ACCA enhancement because Petitioner did not have the three predicate offenses necessary for ACCA purposes." [R. 76 at 5.] The Sixth Circuit recently addressed a similar factual predicate in *United States v. Short*, where the defendant, like Wilkerson, contended that the government did not prove, and he did not plead to, the three predicate offenses required for the ACCA enhancement. 128 F.4th at 825. The Sixth Circuit held that "there are many ways to satisfy the requirements of Rule 11(b)(3)" and the defendant's indictment, PSR, and sentencing hearing—viewed in totality—provided a sufficient factual basis for his plea. *Id.* at 827. Similarly, Wilkerson's PSR (which he did not and still does not object to on any grounds) provides ample evidence of his prior felonies, and even in his present motion he does not dispute his prior felony convictions, or that they were committed on separate occasions.

Wilkerson cites a collection of cases from various circuits with general language regarding indictments and re-arraignment hearings. [R. 76 at 25-27.] However, Wilkerson fails

to set forth any case-specific facts that would show that there was not a sufficient factual basis for his guilty plea. Wilkerson devotes a substantial portion of his Motion to contending that the United States did not prove its case "beyond a reasonable doubt" and thus, his conviction is in violation of the Due Process Clause of the Fourteenth Amendment. [R. 76 at 12-14.] To the extent that Wilkerson asserts that there was an insufficient factual basis because the United States did not prove its case beyond a reasonable doubt, Wilkerson was advised by this Court at his re-arraignment hearing that by pleading guilty he waived his right to make the government prove this case beyond a reasonable doubt. [R. 73 at 10.] As such, it is immaterial whether the United States did—or could have—carried its burden at trial. Accordingly, the Court remains satisfied that Wilkerson's guilty plea rests upon a sufficient factual basis.

3

Wilkerson attacks his sentence on several grounds pertaining to a sentencing enhancement under 21 U.S.C. § 841. [R. 76 at 4.] Wilkerson also requests a retroactive downward variance due to his youth at the time of the offenses of conviction. [R. 91 at 7-8.] First, Wilkerson contends that the "serious violent felony" used for the enhancement under § 841—second degree robbery—was committed when he was a juvenile, and thus, could not be used to enhance his sentence. [R. 76 at 17-18.] Second, Wilkerson makes a novel argument that the "serious violent felony" under § 841 must be the most recent conviction in order for the enhancement to apply. [R. 76 at 19.] Thus, Wilkerson contends that because he had "several intervening arrests and convictions" between the second-degree robbery and the instant conviction, "his conviction was not sequential as required by Congress." [R. 76 at 19.]

Neither of these contentions have merit. First, Wilkerson was sentenced as an adult for

his conviction of second-degree robbery. [R. 39 at 9.] And the Sixth Circuit has held that "[n]othing in § 841(b)(1)(A) indicates that a defendant's age at the time of his or her arrest is relevant to the application of 841." *United States v. Graham*, 622 F.3d 445, 457 (6th Cir. 2010) (declining to address whether juvenile convictions qualify for § 841(b)(1)(A) purposes because the defendant was sentenced as an adult). Second, Wilkerson misreads the statute to state that "the offense of conviction must be next to in time following a prior conviction." [R. 76 at 19.] Wilkerson's nonsensical contention that the word "after" in § 841 implies strict sequence—and thus would reward, rather than punish, repeated disrespect for the law—is wholly unsupported by the language and purpose of the statute. *See Esteras v. United States*, 606 U.S. 185, 191-92 (2025) ("These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally.")

      Wilkerson also posits that the Court should grant a retroactive downward departure because of his youth at the time of the offense. [R. 91 at 7-8.] Wilkerson fails to provide a substantive argument as to why the Court should do so, and simply requests a downward departure, giving no reason other than that he was under 25 at the time of the offense. [R. 91 at 8.] As previously noted, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," and "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016) (quoting *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004). The Court was aware of Wilkerson's age during sentencing, even expressly mentioning that brain development continues well into a person's twenties. [R. 74 at 10-11.] However, the Court considered all relevant factors, including

Wilkerson's age, and found that a downward departure was not appropriate. *Id.* Seeing no reason to depart from the sentence imposed, the Court will deny Wilkerson's request for a sentence reduction.

### 4

Turning to Wilkerson's ineffective assistance of counsel claim, when a defendant claims his attorney was constitutionally ineffective in violation of the Sixth Amendment, the standard from *Strickland v. Washington* guides the Court's review.[2] When assessing an ineffective-assistance-of-counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *See id.* at 687. A court may address the components in either order and does need not to "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

To prove deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured "under prevailing professional norms" and "considering all the circumstances." *Id.* at 688. Judicial scrutiny of

---

[2] Wilkerson also contends that both his trial and appellate counsel committed a "*Cronic*" violation, presumably referring to *United States v. Cronic*, 466 U.S. 648 (1984). *Cronic* discusses when extenuating circumstances outside of counsel's control render counsel ineffective, which is not applicable to Wilkerson's arguments. *See id.* As such, the Court will analyze Wilkerson's claims under the *Strickland* framework.

13

counsel's performance, however, is "highly deferential," consisting of "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Wilkerson asserts several grounds upon which he claims his trial counsel was constitutionally deficient. Wilkerson asserts that his trial counsel (1) did not discuss the gun trace report with him, (2) did not discuss defenses that may be available, (3) failed to raise the interstate commerce defense for the gun charge, (4) did not discuss the criteria necessary to be designated an Armed Career Offender, (5) did not tell him that there is no parole in the federal system, (6) did not explain to him what "knowing," "intelligent," or "beyond a reasonable doubt mean," and (7) did not file a motion to suppress, as apparently requested by Wilkerson.  [R. 76 at 6.]

With regards to Wilkerson's trial counsel, it is not necessary to analyze whether trial counsel's alleged deficiencies were outside the bounds of reasonableness because Wilkerson does not explain how he was prejudiced by these supposed deficiencies, other than vaguely

14

claiming that he "may have decided to go to trial" if he knew what beyond a reasonable doubt meant. [R. 76 at 29.] A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974). As the United States points out, Wilkerson fails to state the grounds on which counsel should have objected to the PSR, file a motion to suppress, or challenge the evidence against him. [R. 85 at 15.] Wilkerson also contends that his counsel should have told him that he had a "complete defense," presumably referring to the interstate commerce argument discussed above. [R. 76 at 28.] As explained above, this "defense" had no merit, so Wilkerson could not have been prejudiced by his counsel opting not to propound a frivolous defense upon this Court. Because Wilkerson has failed to demonstrate any prejudice, his claim of ineffective assistance of counsel as to trial counsel is denied.

Wilkerson claims that his appellate counsel was deficient arise out of Wilkerson's claims that the government "threatened" him, causing him to dismiss his appeal. [R, 76 at 32-33.] Wilkerson asserts that his appellate counsel failed to "inform [him] that a government attorney was not allowed to be vindictive in prosecuting defendants" and that "it is unethical to threaten a citizen to [obtain] a legal advantage." [R. 76 at 33.] As the Court explained above, there is no indication that the government communicated with either Wilkerson or his appellate counsel. *See supra*, Part II(A). Instead, Wilkerson's appellate counsel correctly explained to him one of the possible outcomes of pursuing an appeal. *Id.* Thus, because Wilkerson has not demonstrated that his appellate counsel has strayed from the "wide range of reasonable professional assistance," his claim of ineffective assistance of counsel as to appellate counsel is denied.

C

Under Rule 11(a) of the Federal Rules Governing § 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* In this case, reasonable jurists would not debate the denial of Wilkerson's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Petitioner Cary Lamar Wilkerson Jr.'s Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 [**R. 76**] is **DENIED**.

2. A Certificate of Appealability is **DENIED** as to all issues raised; and

3. Judgment in this matter will promptly follow.

This the 2nd day of December, 2025.

Gregory F. Van Tatenhove
United States District Judge